# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES MARZANO and JOHN                )
MAJOREK, on behalf of themselves       )
and others similarly situated,         )
                                       )
        Plaintiffs,                        )
                                       )      **No. 12 C 7696**
        v.                                 )
                                       )      **Judge Ruben Castillo**
PROFICIO MORTGAGE VENTURES,             )
LLC, PROFICIO BANK, and FIRST           )
LIBERTY FINANCIAL GROUP, LLC,           )
                                       )
        Defendants.                        )

## MEMORANDUM OPINION AND ORDER

James Marzano and John Majorek ("Plaintiffs") bring this collective and class action against Proficio Mortgage Ventures, LLC, Proficio Bank, and First Liberty Financial Group, LLC (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Illinois Minimum Wage Law ("Illinois Wage Law"), 820 Ill. Comp. Stat. 105/1 *et seq.*; the Illinois Wage Payment and Collection Act ("Illinois Payment Act"), 820 Ill. Comp. Stat. 115/1 *et seq.*; the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"), Ohio Rev. Code Ann. §§ 4111.01, 4111.03, 4111.08, and 4111.10; the Ohio Constitution, Article II § 34a ("Ohio Constitution"); the Ohio Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15; and Ohio contract law. (R. 1, Compl.)

Presently before the Court are Defendants' motions to dismiss or stay these proceedings pending arbitration. (R. 23, First Liberty's Mot.; R. 27, Proficio's Mot.) For the reasons set forth below, the Court grants Defendants' motions.

## RELEVANT FACTS

First Liberty Financial Group, LLC ("First Liberty") is a regional mortgage bank licensed in 17 states. (R. 1, Compl. ¶ 27.) Proficio Mortgage Ventures, LLC is a nationwide mortgage lender and a wholly owned subsidiary of Proficio Bank (collectively, "Proficio"), which began as a Utah state-chartered commercial bank and is now a "non-member bank of the FDIC." (*Id.* ¶¶ 22, 24.) Proficio acquired the First Liberty branch office in Independence, Ohio in December 2011. (*Id.* ¶ 14.)

At all relevant times, Defendants employed Plaintiffs and putative class members as "loan officers," "senior loan officers," "senior mortgage bankers," and in other similar mortgage origination positions (collectively, "Loan Officers"). (*Id.* ¶¶ 3, 28.) During the month of February 2012, Marzano, an Illinois resident, was employed by Proficio as a Loan Officer in Schaumburg, Illinois. (*Id.* ¶ 13.) In this suit, he represents the putative "Illinois Class," which is made up of all persons employed by Defendants as Loan Officers in Illinois within five years of the filing of the present complaint. (*Id.* ¶ 7.) Majorek, an Ohio resident, was employed by First Liberty and, after the acquisition, by Proficio as a Loan Officer in Independence, Ohio from May 2011 until the end of February 2012. (*Id.* ¶ 14.) Majorek represents the putative "Ohio Class," which is made up of all persons employed by Defendants as Loan Officers within Ohio who failed to receive overtime pay, or were subject to the Loan Officer compensation agreement that Proficio allegedly breached, within three years of the filing of the present complaint. (*Id.* ¶ 8.) All Loan Officers shared common job duties and descriptions and were classified by Defendants as exempt employees, meaning that they were ineligible for overtime compensation. (*Id.* ¶¶ 35, 38.)

Plaintiffs allege that Defendants violated the FLSA and Illinois and Ohio State laws by failing to: (1) keep accurate records of the hours Plaintiffs and other Loan Officers worked; and (2) compensate Plaintiffs and other Loan Officers for the overtime hours they worked during the weekends and evenings. (*Id.* ¶¶ 31, 39-40.) Specifically, Plaintiffs allege that Defendants paid them and putative class members "on a draw against commission and/or hourly basis without any payment for overtime premiums." (*Id.* ¶ 30.) Plaintiffs allege that Defendants "uniformly applied these payment structures to all Loan Officers in an effort to avoid the overtime [wage] requirements under the FLSA, and Illinois and Ohio state laws." (*Id.*) Plaintiffs also allege that Proficio paid its Loan Officers on an hourly basis but forbade them from recording more than 40 hours per week or altered the timesheets to remove any time worked in excess of 40 hours per week. (*Id.* ¶ 34.) Plaintiffs allege that Defendants treated the Loan Officers as exempt employees even though they were non-exempt and were entitled to overtime pay. (*Id.* ¶¶ 35, 36.)

## PROCEDURAL HISTORY

On September 26, 2012, Plaintiffs filed their seven-count complaint with this Court in their individual capacities and on behalf of others similarly situated. (R. 1, Compl.) In Count I, Plaintiffs allege that Defendants willfully violated the FLSA by failing to maintain accurate records and pay the required overtime premiums. (*Id.* ¶¶ 70-76.) In Counts II and III, Marzano alleges that Proficio violated the Illinois Wage Law and Illinois Payment Act by failing to properly compensate him and the putative Illinois Class at the rate of one and one-half times the regular hourly wage for overtime hours worked. (*Id.* ¶¶ 81-91.) In Counts IV through VI, Majorek alleges that Defendants willfully and recklessly violated the Ohio Wage Act and the Ohio Constitution by failing to properly compensate him and the putative Ohio Class at the rate of one and one-half times the regular hourly wage for overtime hours worked and failing to

maintain accurate records of their hours. (*Id.* ¶¶ 95-112.) In Count VII, Majorek alleges that Proficio violated Ohio common law of contract formation and breach when it failed to pay Majorek and the putative Ohio Class an hourly wage as specified in the Loan Officer compensation agreements. (*Id.* ¶¶ 115-119.)

On November 1, 2012, First Liberty moved to stay these proceedings or, in the alternative, to dismiss or, in the alternative, to sever and transfer the claims against it to the Northern District of Ohio. (R. 23, First Liberty's Mot.) According to First Liberty, all of its employees, including Majorek, entered into an employment agreement that provides that "any dispute, controversy, claim, or difference between Employer and Employee which directly or indirectly relates to or arises out of this Agreement, or its breach" is subject to arbitration. (*Id.* ¶¶ 7, 13.) First Liberty argues that Plaintiffs' claims against it are subject to binding arbitration under the arbitration clause and should therefore be stayed or dismissed pursuant to Rule 12(b)(1) or Rule 12(b)(6). (*Id.* ¶ 7.) First Liberty further asserts that Plaintiffs' claims against it should be dismissed because Plaintiffs failed to file consent forms with respect to the FLSA collective action against First Liberty as they are required to do by 29 U.S.C. § 216(b). (*Id.* ¶ 16.) In the alternative, First Liberty argues that Plaintiffs' claims against First Liberty do not arise out of the same transaction or occurrence as their claims against Proficio, nor does a common question of law or fact exist between the claims, and they should therefore be dismissed, or severed and transferred to the Northern District of Ohio, due to improper joinder. (*Id.* ¶¶ 21-27.) Finally, First Liberty argues that the claims against it should be dismissed, or severed and transferred to the Northern District of Ohio, pursuant to Rule 12(b)(3) because Ohio is the only venue with any connection to those claims. (*Id.* ¶ 30.)

On November 2, 2012, Proficio moved to dismiss Plaintiffs' claims against it or, in the alternative, to stay these proceedings pending arbitration. (R. 27, Proficio's Mot.) Proficio asserts that Plaintiffs and every other Loan Officer it employed entered into an employment agreement that includes an arbitration provision requiring binding arbitration and the waiver of "litigation and trial by jury in any action or proceeding to which they may be parties, arising out of, or in any way pertaining or relating to, this agreement." (R. 28, Proficio's Mem. at 3.) Proficio argues that Plaintiffs' claims against it must be dismissed pursuant to Rule 12(b)(3) because the only proper venue for their claims is binding arbitration in Salt Lake City, Utah. (*Id.* at 12.) In the alternative, Proficio argues that the claims against it should be dismissed pursuant to Rule 12(b)(1) because the arbitration agreement eliminates the Court's subject matter jurisdiction. (*Id.* at 13.) Finally, Proficio argues that if the claims are not dismissed, they should be stayed pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, pending resolution of binding arbitration. (*Id.* at 14.)

The thrust of Defendants' arguments is that this Court is not the appropriate venue for the adjudication of Plaintiffs' claims. Because the Court finds these arguments compelling and dismisses Plaintiffs' complaint for improper venue, the Court does not address the myriad of other reasons Defendants provide for the dismissal of Plaintiffs' complaint.

## LEGAL STANDARD

Rule 12(b)(3) allows a party to move for dismissal of an action when it is not filed in the proper venue. Fed. R. Civ. P. 12(b)(3). The plaintiff bears the burden of establishing that venue is proper. *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981) (citing *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1970)). When ruling upon a Rule 12(b)(3) motion to dismiss for improper venue, the Court takes all the

allegations in the complaint as true, unless contradicted by an affidavit. *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). The Court may, however, consider facts outside the complaint. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). The Court must resolve all factual disputes and draw all reasonable inferences in the plaintiffs' favor. *Nagel*, 995 F. Supp. at 843. When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## ANALYSIS

### I. Whether Plaintiffs' claims against First Liberty are subject to arbitration

Plaintiffs allege that First Liberty did not keep accurate records of the hours that Plaintiffs and other Loan Officers worked and purposefully misrepresented them as exempt employees. (R. 1, Compl. ¶¶ 35, 39.) Plaintiffs also allege that First Liberty did not pay them the overtime compensation they were entitled to. (*Id.* ¶ 40.) First Liberty contends that the employment agreement it entered into with all of its employees, including Majorek, addresses the wage and compensation claims raised by Plaintiffs, rendering the claims subject to arbitration. (R. 23, First Liberty's Mot. ¶¶ 7, 14.)

The FAA "declares a national policy favoring arbitration," *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)), and reflects "the fundamental principle that arbitration is a matter of contract." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal citations and quotation marks omitted). Section 2 of the FAA establishes that an arbitration clause in "a contract evidencing a transaction involving interstate commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract."

9 U.S.C. § 2. The purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

After the parties have signed an arbitration agreement, the only issues a court may properly decide are threshold questions of substantive arbitrability: whether the parties agreed to arbitrate a particular issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). These threshold questions of substantive arbitrability include: (1) whether the parties are bound by a given arbitration agreement; and (2) whether an arbitration clause in a binding contract applies to a particular type of controversy. *Id.* at 84. Courts are to uphold and enforce arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 131 S. Ct. at 1745-46 (internal citations and quotation marks omitted). The FAA establishes, as a matter of federal law, that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The language of the arbitration provision contained in the First Liberty employment agreement, in pertinent part, is as follows:

> Employee agrees that any dispute, controversy, claim, or difference between Employer and Employee which directly or indirectly relates to or arises out of this Agreement, or its breach, shall be subject to arbitration in or within one hundred miles of the city where the branch office is located . . . It is the intention of the parties that this Agreement shall be enforceable under the Federal Arbitration Act and at common law.

(R. 23-4, Ex. C1, First Liberty Employment Agreement at 6.) Plaintiffs do not contest the validity of the arbitration provision within the First Liberty employment agreement. (*See* R. 43, Pls.' Resp.) Thus, the only issue for this Court to decide regarding Plaintiffs' claims against

First Liberty is whether they fall within the scope of the arbitration provision. *See Howsam*, 537 U.S. at 84; *Cont'l Cas. Corp. v. Am. Nat'l Ins. Co.*, No. 02 C 6607, 2004 WL 406821 (N.D. Ill. Feb. 13, 2004) (finding first that a valid arbitration agreement existed which required arbitration in another district, then dismissing based on improper venue), *aff'd sub nom. Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727 (7th Cir. 2005)

The language of the First Liberty arbitration provision is unambiguous: any dispute that "directly or indirectly relates to or arises out of" the employment agreement is to be arbitrated within 100 miles of the city where the branch office is located—in this case, Independence, Ohio. (R. 23-4, Ex. C1, First Liberty Employment Agreement at 6.) The Seventh Circuit has held that the language "arising out of" is broad in scope and reaches all disputes that have their origin in the employment contract, regardless of whether the dispute involves interpretation or performance of the contract *per se. Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)); *Keifer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (describing an arbitration clause with the language "arising out of or relating to" as extremely broad and capable of an expansive reach, creating a presumption of arbitrability).

Plaintiffs correctly assert that FLSA claims may be properly brought in this Court. (R. 43, Pls.' Resp. at 3.) Statutory claims, like those arising under the FLSA and Illinois and Ohio wage laws, may nevertheless be subject to an enforceable arbitration agreement under the FAA. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) ("absent [certain] compelling considerations, the [FAA] itself provides no basis for disfavoring agreements to arbitrate statutory claims"); *Brown v. Luxottica Retail N. Am. Inc.*, No. 09 C 7816, 2010 WL 3893820, at *6 (N.D. Ill. Sept. 29, 2010) ("Nothing in the FLSA precludes an

agreement to arbitrate a FLSA claim."). Plaintiffs bear the burden of showing that their statutory claims are precluded from the arbitration clause. *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 364 (7th Cir. 1999). They have failed to meet this burden.

Plaintiffs argue that their FLSA and state law overtime claims "have nothing to do with" the First Liberty employment agreement and, therefore, are not subject to the arbitration provision contained therein. (R. 43, Pls.' Resp. at 5.) In support, Plaintiffs cite several cases that they argue hold that FLSA and state law overtime claims are independent from employment contracts. (*Id.* at 4-5.) Plaintiffs' cases are inapposite, as they involve narrow forum selection clauses with dissimilar language to the arbitration provision within the First Liberty employment agreement. *See Pacheco v. St. Luke's Emergency Assocs., P.C.*, 879 F. Supp. 2d 136, 140-41 (D. Mass. July 20, 2012); *Fuller v. Goldstar Estate Buyer's Corp.*, No. 10–cv–5839, 2011 WL 809429, at *3 (N.D. Ill. Mar. 1, 2011); *Crouch v. Guardian Angel Nursing, Inc.*, No. 3:07–cv–00541, 2009 WL 3738095, at *2-3 (M.D. Tenn. Nov. 4, 2009); *Schultz v. All-Fund, Inc.*, No. JFM 06 CV 2016, 2007 WL 2333049, at *6 (D. Md. Aug. 13, 2007); *Perry v. Nat'l City Mortg., Inc.*, No. 05-cv-891-DRH, 2006 WL 2375015, at *4-5 (S.D. Ill. Aug. 15, 2006); *Saunders v. Ace Mortg. Funding, Inc.*, No. 05-1437, 2005 WL 3054594, at *3-4 (D. Minn. Nov. 14, 2005).

Initially, the Court notes that forum selection clauses are appropriately analogized to arbitration clauses. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."). The cases Plaintiffs rely on to support the argument that their FLSA claims fall outside the First Liberty arbitration provision, however, are not analogous. In *Crouch*, for example, the forum selection clause stated, in relevant part, "that any action *to enforce any provision of this*

*Agreement*" shall be brought in Mississippi. *Crouch*, 2009 WL 3738095, at *2 (alteration in original). The court held that because the plaintiff was asserting violations of the FLSA rather than suing to enforce any provision of the contract, the forum selection clause did not apply. *Id.*

Similarly, the forum selection clause at issue in *Perry* began by instructing that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Ohio" and went on to "confer exclusive jurisdiction" on federal and state courts in Montgomery County, Ohio. *Perry*, 2006 WL 2375015, at *2. The court held that "the forum selection clause is clear that it applies to 'this Agreement'" and therefore, because the plaintiff was not seeking to enforce any specific terms of the agreement but rather was suing based on the FLSA, the claim was not subject to the forum selection clause. *Id.* at *4; *accord Fuller*, 2011 WL 809429, at *3; *see also Pacheco*, 879 F. Supp. 2d at 140-41 (finding that the forum selection clause, which applied to "any dispute derived out of [the] agreement," did not cover the plaintiff's FLSA claims because plaintiff's rights under the FLSA were not "derived out of" the employment agreement); *Saunders*, 2005 WL 3054594, at *4 (finding that the clause indicating waiver of the employee's "right to raise the questions of jurisdiction and venue in any action that [the *employer*] may bring to any such court against Employee" did not cover FLSA claims brought by *employees*). The arbitration provision within the First Liberty employment agreement uses broader language than any of these forum selection clauses.

A case involving a forum selection clause that is analogous to the arbitration provision at issue here, but which Plaintiffs do not rely on, is *Ruifrok v. White Glove Restaurant*, No. DKC 10–2111, 2010 WL 4103685 (D. Md. Oct. 18, 2010). The forum selection clause at issue in *Ruifrok* applied to "any action arising out of this Agreement or the parties' performance hereunder." *Id.* *3. The plaintiff brought FLSA and state wage law claims, *id.* at *1, and,

attempting to avoid removal, the defendants cited *Schultz*, *Crouch*, *Perry*, and *Saunders* to support their argument that the FLSA claims had "nothing whatever to do with" the employment agreement, *id.* at *3. Distinguishing the same cases Plaintiffs rely on here, the *Ruifrok* court held that the language in the forum selection clause was broader than the clauses in any of those cases and that it "encompasse[d] the rate and manner of pay and reimbursement to Plaintiff, which [was] the core of the FLSA and related state law claims." *Id.* at *6.

The First Liberty arbitration clause uses similarly broad language. By requiring the parties to arbitrate any action that "directly or indirectly relates to or arises out of" the employment agreement, the provision necessarily encompasses controversies regarding an employee's compensation and rate of pay. *See Laughlin v. VMware, Inc.*, No. 5:11–CV–00530, 2012 WL 298230, at *7-*8 (N.D. Cal. Feb. 1, 2012) (holding that claims arising from the employment relationship between a plaintiff and a defendant arise out of and relate to the employment agreement); *Lozdoski v. City of Chi.*, No. 09 C 658, 2009 WL 2031804, at *2 (N.D. Ill. July 10, 2009) (holding that the plaintiffs' FLSA claims "clearly ar[o]se out of the terms and conditions of their employment" and were therefore subject to arbitration under the collective bargaining agreement); *Shipp v. XA, Inc.*, 06 C 1193, 2006 WL 2583720, at *4 (N.D. Ill. Aug. 31, 2006) (holding that plaintiff's FMLA and Illinois Payment Act claims necessarily arose out of and related to her employment agreement). While Plaintiffs' FLSA and state law overtime claims are not based on any specific terms of the employment agreement, they do arise out of the agreement, as they depend on First Liberty's employment of Plaintiffs. *See Ruifrok*, 2010 WL 4103685, at *6; *see also Tripp v. Renaissance Advantage Charter Sch.*, No. 02-9366, 2003 WL 22519433, at *5 (E.D. Penn. Oct. 8, 2003) (stating that while an FLSA claim is statutory not contractual, the facts giving rise to an FLSA claim necessarily involve a plaintiff's employment).

Based on the broad language of the arbitration provision in the First Liberty employment agreement and the instruction that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25, this Court finds that Plaintiffs' claims against First Liberty "directly or indirectly relate[ ] to or arise[ ] out of [the] Agreement, or its breach" and are therefore subject to arbitration. (R. 23-4, Ex. C1, First Liberty Employment Agreement at 6.)

First Liberty contends that the primary relief it seeks is a stay pending arbitration and a transfer to the Northern District of Ohio. (R. 46, First Liberty's Reply at 2.) Venue is not proper in the Northern District of Ohio, however, so a transfer is not an appropriate remedy. *See* 28 U.S.C. § 1406(a). Rather, the proper venue for Plaintiff's claims against First Liberty, pursuant to the Employment Agreement, is "arbitration in or within one hundred miles of" Independence, Ohio. (R. 23-4, Ex. C1, First Liberty Employment Agreement at 6.) This Court is neither arbitration nor within 100 miles of Independence, Ohio. Accordingly, dismissal of Plaintiffs' claims against First Liberty is appropriate. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("[A] Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district."); *Cont'l Cas. Co.*, 417 F.3d at 733.

## II. Whether Plaintiffs' claims against Proficio are subject to arbitration

### A. Enforceability of the arbitration provision

Proficio argues that the employment agreement it entered into with all of its employees, including Plaintiffs, addresses the wage and compensation claims claims raised by Plaintiffs,

rendering the claims subject to binding arbitration. (R. 28, Proficio's Mem. at 3, 6.) The relevant language of the Proficio arbitration provision is as follows:

> THE PARTIES HERETO WAIVE LITIGATION AND TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THEY MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING OR RELATING TO, THIS AGREEMENT. . . . ALL PROCEEDINGS WILL BE MANAGED THROUGH BINDING ARBITRATION.

(R. 28-1, Ex. A, Proficio Employment Agreement ¶ 22.) As a threshold matter, Plaintiffs contend that the arbitration provision within the Proficio employment agreement is invalid and unenforceable because it is vague, illusory, and unconscionable. (R. 42, Pls.' Resp. at 6.) Plaintiffs argue that the arbitration provision is "hopelessly vague and indefinite" because it lacks procedural and substantive rules, time limitations, cost information, and venue provisions. (*Id.* at 8-9.) Plaintiffs further argue that the arbitration provision is illusory because Proficio can unilaterally enact or change the arbitration policies without notice to Plaintiffs. (*Id.* at 9.) Finally, Plaintiffs argue that the arbitration provision is substantively unconscionable because of its vagueness and because the "prevailing party" will be awarded reasonable fees and costs, contrary to the intent of the FLSA. (*Id.* at 11-12.)

To determine whether a valid agreement to arbitrate exists between two parties, a court must look to the state law that ordinarily governs the formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). A court must apply the choice of law rules of the forum state in which it sits to determine what substantive state law governs the dispute. *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 542 (7th Cir. 1978) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Accordingly, Illinois choice of law rules apply here. Illinois courts give effect to a contract's choice of law provision as long as the contract is valid, the law chosen is not contrary to Illinois's fundamental public policy, and there is a reasonable

relationship between the chosen state law and the parties or the transaction. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 706 (7th Cir. 2004) (citing *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000); *Restatement (Second) Conflict of Law* § 187 (1971)).

The Proficio employment agreement contains a choice of law provision stating that the agreement "shall be governed by, and construed in accordance with, the laws of the State of Utah." (R. 28-1, Ex. A, Proficio Employment Agreement ¶ 20.) Proficio relies on the choice of law provision in the employment agreement and cites only Utah law to support the validity of the arbitration provision. (R. 47, Proficio's Reply at 9.) While Plaintiffs cite Illinois law to support their arguments that the arbitration provision is invalid and argue that some of their claims involve important matters of Illinois public policy, they do not contend that applying Utah law would be contrary to such public policy or that Utah bears no reasonable relationship to this matter. (R. 42, Pls.' Resp. at 7.) Additionally, Plaintiffs concede that "it does not matter [whether the Court relies on Illinois or Utah law] because Utah law agrees with Illinois law" with regards to contract validity. (*Id.* at 7 n.2) (internal citation omitted). This concession makes it unnecessary for the Court to decide whether Illinois or Utah law applies, as it cannot be said that the parties disagree about the application of Utah law. *Guardsmark*, 381 F.3d at 705 ("This concession makes it unnecessary for us to decide whether Illinois or Tennessee law applies to this threshold issue, or if those two laws differ in any material sense."). Accordingly, the Court will apply Utah law to determine whether the arbitration provision is valid. *See Rana v. Coll. Admissions Assistance, LLC*, No. 11 C 4280, 2012 WL 1245674, at *2 (N.D. Ill. Apr. 13, 2012) (applying the law selected in the contract to determine whether the contract was valid when the parties did not argue that there was any significant difference between Illinois law and Texas

law); *Paul Davis Sys. of N. Ill., Inc. v. Paul W. Davis Sys., Inc.*, No. 98 C 2027, 1998 WL 749041, at *3 (N.D. Ill Oct. 15, 1998) (applying a choice of law clause selecting Florida law when the plaintiff failed to argue that Florida law would violate Illinois public policy or that Florida bore no reasonable relationship to the parties or transactions).

## 1. Whether the arbitration provision is indefinite

Plaintiffs first take issue with the allegedly indefinite nature of the arbitration provision and contend that the vagueness gives Proficio complete discretion to "demand arbitration anywhere at any time at any cost under any set of rules or no rules at all." (R. 42, Pls.' Resp. at 9.) Plaintiffs assert that Proficio could name one of its own employees as the arbitrator or elect to decide the dispute with a coin toss. (*Id.*)

In interpreting contracts, the intentions of the parties are controlling under Utah law. *Cent. Fla. Investments, Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002). In evaluating the contract, Utah courts "attempt to harmonize all of the contract's provisions and all of its terms." *Id.* (citing *Dixon v. Pro Image Inc.*, 987 P.2d 48, 52 (Utah 1999)). A contract provision is ambiguous when it is "reasonably capable of being understood in more than one sense." *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1074 (Utah 1997) (quoting *Black's Law Dictionary* 73 (5th ed. 1979)). Under Utah law, an agreement cannot be enforced if its terms are indefinite. *Nielsen v. Gold's Gym*, 78 P.3d 600, 602 (Utah 2003) (quoting *Richard Barton Enters. v. Tsern*, 928 P.2d 368, 373 (Utah 1996)). An agreement may be enforced where some terms are missing, however, if the essential terms are certain and the court can determine "whether the agreement has been kept or broken." *Id.* (quoting *Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991)). The key determination is whether there was "a meeting of the minds on the integral features of an agreement." *Id.* (quoting *Tsern*, 928 P.2d at

373). Uncertainties within contract terms can be made complete or certain by presumption, rule, or custom. *Reed v. Alvey*, 610 P.2d 1374, 1378 (Utah 1980) (citing *Shull v. Sexton*, 390 P.2d 313, 316 (Colo. 1964)).

In the instant case, any matters of uncertainty in the Proficio arbitration provision can be made complete under the FAA and the Utah Uniform Arbitration Act, Utah Code Ann. § 78B-11-101 *et seq.* Both statutes provide for the enforcement of arbitration agreements that do not specify the details of arbitration. *See, e.g.*, Utah Code Ann. § 78B-11-112 (2008) ("If the parties to an agreement to arbitrate . . . have not agreed on a method [for appointing an arbitrator], . . . the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator."); *id.* §§ 78B-11-116, 78B-11-112 (giving the arbitrator discretion over the manner, time, and place of the arbitration proceeding); *accord* 9 U.S.C. § 5 (allowing a court to choose an arbitrator if the arbitration agreement does not identify one). Utah law, like federal law, favors the enforcement of arbitration agreements. *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, 479 (Utah 1986) ("It is our policy to interpret arbitration clauses in a manner that favors arbitration."). Filling any gaps in the arbitration provision under the FAA or the Utah Uniform Arbitration Act conforms with Utah's policy favoring arbitration where parties have manifested an intent to arbitrate. *See, e.g., Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 716 (7th Cir. 1987) (filling gaps in the one-line arbitration agreement in a commercial dispute fulfilled the policy of the UCC).

Quoting an Illinois case that nonetheless conforms with Utah law, Plaintiffs argue that "[a] contract is sufficiently definite and certain to be enforceable only if the court is enabled from the terms and provisions thereof . . . to ascertain what the parties have agreed to do." (R. 42, Pls.' Resp. at 8) (quoting *Morey v. Hoffman*, 145 N.E.2d 644, 647-48 (Ill. 1957)) (internal

16

quotation marks omitted); *accord Nielsen*, 78 P.3d at 602. Here, the Court *is* able to ascertain what the parties have agreed to do: they have agreed to submit any dispute "arising out of, or in any way pertaining or related to [the employment] agreement" to binding arbitration. (R. 28-1, Ex. A, Proficio Employment Agreement ¶ 22.) "There is nothing in the contract here that is unclear, ambiguous or vague, and even if there were, the parties have agreed to arbitrate such things first." *Lindon City v. Eng'rs Constr. Co.*, 636 P.2d 1070, 1073 (Utah 1981). "There is nothing in the [arbitration provision] that an average, literate person would not be able to read and interpret such as to demand a judge's decision rather than a competent arbitrator." *Id.* If necessary, the parties can petition the Circuit Court for Salt Lake City, Utah to fill in any details or "missing terms" in the arbitration provision under the FAA and the Utah Uniform Arbitration Act. (*Id.* ¶ 20) ("both parties hereby agree that the Circuit Court of Salt Lake, State of Utah, shall have the exclusive jurisdiction to hear and determine any and all disputes" concerning the employment agreement and the parties' rights under it); *see, e.g., Reed*, 610 P.2d at 1378 (stating that matters of uncertainty in a contract can be made complete by rule); *Schulze & Burch Biscuit Co.*, 831 F.2d at 715-16 (finding that the FAA remedies missing details in arbitration agreements and enforcing a one-line arbitration provision). Thus, the Proficio arbitration provision is not too vague to be enforceable under Utah law.

### 2. Whether the arbitration provision is illusory

Plaintiffs next argue that the arbitration provision is illusory because Proficio can unilaterally enact or change its arbitration policies without notice to Plaintiffs. (R. 42, Pls.' Resp. at 9.) An illusory promise in a contract "is but a 'façade' that imposes no performance obligations on the promisor and affords no consideration to the promisee; the putative promise neither binds the person making it, nor functions as consideration for a return promise." *Flood v.*

17

*ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1119 (10th Cir. 2010) (quoting *Peirce v. Peirce*, 994

P.2d 193, 199 (Utah 2000) and applying Utah law) (internal quotation marks omitted). Plaintiffs

point to paragraph 2(d) of the Proficio employment agreement, which states:

> Employee recognizes the right of Employer at any time, in its sole and absolute
> discretion, and with or without notice, to change, modify, or adopt new rules,
> policies, procedures, practices, and regulations affecting this employment
> relationship and Employee's duties required herein.

(R. 28-1, Ex. A, Proficio Employment Agreement ¶ 2(d).) Paragraph 2(d) relates only to the

parties' employment relationship, however, and does not give Proficio the right to modify any

terms of the arbitration provision. The entirety of paragraph 2 refers narrowly to the employee's

required job duties. (*Id.* ¶ 2.) Paragraph 19 of the employment agreement, on the other hand,

provides that *the agreement as a whole* "may be amended only by a written document signed by

both parties." (*Id.* ¶ 19.) This clause indicates that the arbitration agreement is not illusory

because neither Proficio nor Plaintiffs could unilaterally change the arbitration agreement

without notice to the other.

### 3. Whether the arbitration provision is unconscionable

Finally, Plaintiffs argue that the arbitration provision is unenforceable because it is

substantively unconscionable. Plaintiffs offer two reasons why the arbitration provision is

unconscionable: (1) "for the same reasons it is hopelessly vague and indefinite"; and (2) because

it provides for the "prevailing party" to be awarded reasonable attorneys' fees, costs and other

expenses. (R. 42, Pls.' Resp. at 11-12) (quoting R. 28-1, Ex. A, Proficio Employment

Agreement ¶ 17, which provides that "[s]hould either party institute legal proceedings to enforce

the terms or conditions of this Agreement, the prevailing party shall be entitled to recover any

reasonable attorney's fees, costs and other expenses reasonably incurred therein"). This Court

has dispensed with Plaintiffs' first argument, finding that any gaps in the arbitration clause may

be filled in by the FAA and the Utah Uniform Arbitration Act. Although Plaintiffs do not articulate it, their second reason why the provision is unconscionable seems to be that awarding the prevailing party reasonable attorneys' fees is contrary to the public policy behind the FLSA, which only entitles prevailing *plaintiffs* to recover fees and costs. 29 U.S.C. § 216(b).

The only case Plaintiffs cite in support of their argument that providing for the "prevailing party" to be entitled to fees and costs is unconscionable, *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-CV-02272-WJM-KLM, 2011 WL 2791338 (D. Colo. July 15, 2011), is distinguishable from the instant case in a few key ways. First, plaintiffs in that case filed affidavits stating what the costs of arbitration would be, that plaintiffs were unable to pay them, and that they would have to abandon their claims if forced to pay defendant's attorney's fees. *Id.* at *10. Additionally, the provision allowing the prevailing party to recover fees was within the arbitration clause itself, not a separate provision in the larger employment agreement. *Id.* at *2. Finally, the *Daugherty* court did not find that the fees and costs provision made the entire contract unenforceable; rather, it severed the offending terms and held that "[a]ll other provisions of the arbitration agreement [we]re to be enforced as written." *Id.* at *13 (citing the agreement's severability provision).

Unlike the plaintiffs in *Daugherty*, Plaintiffs here have not filed affidavits, or asserted in their briefs, that the cost to them would be prohibitively expensive, or even what the costs of arbitration might be. Under Utah law, "[a] party claiming unconscionability bears a heavy burden." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (citing *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985)); *see also Sosa v. Paulos*, 924 P.2d 357, 361 (Utah 1996) (holding that assertion of bias was not enough to prove unconscionability, plaintiff needed to present evidence). In Utah, "a duly executed written

contract should be overturned only by clear and convincing evidence." *Res. Mgmt. Co.*, 706 P.2d at 1043 (citing *Otteson v. Malone*, 584 P.2d 878 (Utah 1978)). Plaintiffs also bear a heavy burden to prove that the arbitration provision they signed bars them from vindicating their statutory rights. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) ("The 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."); *Johnson v. W. Suburban Bank*, 225 F.3d 366, 369 (3d Cir. 2000) ("[A] party who agrees to arbitrate, but then asserts that his or her statutory claim cannot be vindicated in an arbitral forum, faces a heavy burden."). Plaintiffs provide only the barest assertions that the fees and costs clause in paragraph 17 of the employment agreement makes the arbitration provision unconscionable. (R. 42, Pls.' Resp. at 12) (making a broad assertion that the fees and costs clause "is unconscionable and further evidence of the oppressiveness of the agreement" without providing any details or supporting factual allegations). Plaintiffs have failed to meet their burden to prove that the arbitration provision is unconscionable or that it will prevent them from vindicating their statutory rights.

Unlike the agreement at issue in *Daugherty*, the Proficio employment agreement contains an arbitration provision that is entirely separate from the clause allowing for recovery of reasonable costs and fees. (R. 28-1, Ex. A, Proficio Employment Agreement ¶¶ 17, 22.) Thus, the fees and costs clause in paragraph 17 does not bear on the validity of the arbitration provision. The validity of ancillary provisions is an issue for the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004) (holding that the arbitrator rather than the court should determine whether provisions requiring

parties to bear their own costs conflicted with the federal statutory scheme so as to be unenforceable).

Paragraph 17 of the employment agreement contains several ambiguities. For example, it is unclear whether the fees and costs clause applies to arbitrations, or whether the clause intends to supersede the FLSA or has that effect. It is equally unclear that the arbitrator will interpret the fees and costs clause to apply to Plaintiffs' present claims. When ambiguous provisions in the contract may have the effect of limiting an arbitration award, the arbitrator should construe the limiting provision and determine enforceability. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995) (affirming order to arbitrate when there was a possibility that the arbitrator would construe the arbitration clause to give full effect to the parties' statutory remedies). "When an agreement to arbitrate encompasses statutory claims, the arbitrator has the authority to enforce substantive statutory rights, even if those rights are in conflict with contractual limitations in the agreement that would otherwise apply." *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 824 (8th Cir. 2003) (holding that the arbitration agreement applied to FLSA claims even though it limited damages and included a cost-sharing provision); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 333 (S.D.N.Y. 2003) ("[I]t is for the arbitrator to construe the notice provision of the Arbitration Agreement and determine whether it impermissibly interferes with plaintiff's federal statutory rights."); *see also Carbajal*, 372 F.3d at 906-07 ("[N]o general doctrine of federal law prevents people from waiving statutory rights.").

Additionally, the Proficio employment agreement contains a severability clause providing that the parties agreed to sever paragraph 17, or any other provision, if it is unenforceable. (R. 28-1, Ex. A, Proficio Employment Agreement ¶ 21); *see also Buckeye Check Cashing*, 546 U.S.

at 445 ("As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 85 (D.C. Cir. 2005) (holding that severing the punitive damages provision that undermined public policy concerns and enforcing the arbitration clause was proper when the employment agreement included a severability clause).

Plaintiffs have not met their "heavy burden" of proving that the arbitration clause is substantively unconscionable. *See Randolph*, 531 U.S. at 91; *Dan's Food Stores*, 972 P.2d at 402. Because paragraph 17 is outside the arbitration provision and because it contains ambiguities, it does not render the arbitration clause unconscionable. Plaintiffs will be able to present evidence that the fees and costs provision is unenforceable at arbitration, and the arbitrator may interpret the provision in a way that does not prevent Plaintiffs from vindicating their statutory rights, *see Peirce*, 994 P.2d at 199, or may sever the unenforceable provision, *see PacifiCare*, 538 U.S. at 407.

## B. Scope of the arbitration provision

Having found the Proficio arbitration provision enforceable, this Court turns to the second substantive issue of arbitrability it must consider: whether Plaintiffs' claims are within the scope of the arbitration provision. *See Howsam*, 537 U.S. at 84. Plaintiffs allege that Proficio did not keep accurate records of the hours that Plaintiffs and other Loan Officers worked and purposefully misrepresented them as exempt employees. (R. 1, Compl. ¶¶ 35, 39.) Plaintiffs also allege that Proficio did not pay them the overtime compensation they were entitled to. (*Id.* ¶ 40.) Additionally, Plaintiffs allege that Proficio breached the Loan Officer Compensation agreement by failing to pay them on an hourly basis. (*Id.* ¶¶ 115-19.)

Proficio argues that Plaintiffs' claims are encompassed by the arbitration provision in the employment agreement, and therefore Plaintiffs may only pursue their claims through "binding arbitration in Salt Lake City, Utah." (R. 28, Proficio's Mem. at 4.)

As in their response to First Liberty, Plaintiffs argue that their FLSA and state law overtime claims do not fall within the scope of the Proficio arbitration clause. (R. 42, Pls.' Resp. at 3.) Plaintiffs again rely on *Fuller, Perry, Crouch, Schultz, Saunders,* and *Pacheco* to support their argument that FLSA and state law overtime claims are independent from employment agreements. (*Id.* at 4-5) (citing *Pacheco*, 879 F. Supp. 2d at 140-41; *Fuller*, 2011 WL 809429, at *3; *Crouch*, 2009 WL 3738095, at *2-3; *Schultz*, 2007 WL 2333049, at *6; *Perry*, 2006 WL 2375015, at *4-5; *Saunders*, 2005 WL 3054594, at *3-4). For the same reasons discussed above, however, these cases are distinguishable and not instructive to the interpretation of the Proficio arbitration clause.

The Proficio arbitration clause, like the First Liberty clause, uses the language "arising out of." As discussed in more length above, the Seventh Circuit has held that this language is broad in scope and reaches all disputes having their origin in the employment contract, regardless of whether the dispute involves interpretation or performance of the contract *per se.* *Gore*, 666 F.3d at 1033 (quoting *Sweet Dreams Unlimited*, 1 F.3d at 642); *Keifer*, 174 F.3d at 909-10.

Count VII, a breach of contract claim, clearly arises out of the employment agreement. Although the remainder of Plaintiffs' claims against Proficio are not direct breach of contract claims, they nevertheless arise out of the agreement. The substance of Plaintiffs' claims is compensation and rate of pay, matters that clearly arise out of or relate to the employment agreement between Plaintiffs and Proficio. *See Keifer*, 174 F.3d at 909-10; *Ruifrok*, 2010 WL

4103685, at *6; *Tripp*, 2003 WL 22519433, at *5. Because the Proficio arbitration clause uses broad language, and "any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration," this Court finds that all of Plaintiffs' claims against Proficio fall within the scope of the arbitration provision within the Proficio employment agreement and, therefore, are subject to arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Accordingly, this Court is not the proper venue for the adjudication of Plaintiffs' claims against Proficio, and dismissal of those claims is appropriate. *See, e.g., Metro. Life Ins. Co. v. O'Malley*, 392 F. Supp. 2d 1042, 1045 (N.D. Ill. 2005) (dismissing the case pursuant to Rule 12(b)(3) because the claims were subject to arbitration even where the arbitration clause did not specify where arbitration should occur).

## III.    Whether to compel arbitration or dismiss

Upon finding Plaintiffs' claims subject to arbitration pursuant to their respective employment agreements with First Liberty and Proficio, this Court would typically issue an order compelling the parties to arbitrate those claims. *See, e.g., McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1003-04 (N.D. Ill. 2012); *Price v. NCR Corp.*, No. 12 C 3413, --- F. Supp. 2d --  -, 2012 WL 6103205, at *9 (N.D. Ill. Dec. 10, 2012); *Trustmark Ins. Co. v. Transam. Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 855 (N.D. Ill. 2007). The FAA provides that, upon finding that the claims are arbitrable, a court shall compel arbitration upon the petition of "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. Here, however, neither First Liberty nor Proficio have petitioned the Court to compel arbitration pursuant to the FAA. District courts should not *sua sponte* enforce arbitration clauses. *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (analogizing forum selection

clauses and arbitration clauses and reversing the district court's *sua sponte* dismissal);

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715 SC, 2006 WL 3422198 (N.D. Cal. Nov.

28, 2006) (upon finding that claims are arbitrable, "the Court cannot, *sua sponte,* order parties to

arbitration"); *In re Standard Tallow Corp., KilMgmt.*, 901 F. Supp. 147, 151 (S.D.N.Y. 1995)

("Although the court expressly finds that an agreement to arbitrate all disputes between the

parties in London does in fact exist, . . . [t]he court [ ] does not have before it a proper petition to

compel arbitration there and the court refuses to provide such relief *sua sponte*. For these

reasons, the petition is denied and no order is issued directing arbitration."); *see also Amiron*

*Dev. Corp. v. Sytner*, No. 12-CV-3036 JS ETB, 2013 WL 1332725, at *3 (E.D.N.Y. Mar. 29,

2013) (holding that the court had "no authority to *sua sponte* enforce an arbitration provision");

*Lopardo v. Lehman Bros., Inc.*, 548 F. Supp. 2d 450, 457 (N.D. Ohio 2008) ("A court may not

*sua sponte* force parties to enforce an arbitration agreement.") (citing *American Locomotive Co.*

*v. Gyro Process Co.*, 185 F.2d 316 (6th Cir. 1950); *Britton v. Coop. Banking Grp.*, 916 F.2d

1405, 1413 (9th Cir. 1990)).

Even if Defendants had sought an order compelling arbitration, the Court may only

compel arbitration "if the following three elements are shown:  a written agreement to arbitrate, a

dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins.*

*Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).  While the first two elements are

clearly present, it is not clear that Plaintiffs have refused to arbitrate.  The FAA requires parties

demanding arbitration to provide written notice of the demand so that responding parties may

agree to arbitrate and thus avoid court involvement. *All Saint's Brands, Inc. v. Brewery Grp.*

*Denmark, A/S*, 57 F. Supp. 2d 825, 828 (D. Minn. 1999) (citing 9 U.S.C. § 4).  "Judicial

involvement prior to this sequence is premature, since it is only 'the alleged failure, neglect, or

refusal of another to arbitrate' which triggers jurisdiction under 9 U.S.C. § 4. *Id.* (quoting 9 U.S.C. §4). Here, Defendants have neither shown by providing the Court with demands they may have sent to Plaintiffs nor even alleged that Plaintiffs have refused to arbitrate.

Absent a request to compel arbitration and a showing that Plaintiffs have refused to arbitrate, this Court will not compel arbitration *sua sponte.* Accordingly, dismissal of the complaint without prejudice pursuant to Rule 12(b)(3) is the appropriate remedy. *Faulkenberg,* 637 F.3d at 808; *Cont'l Cas. Co.,* 417 F.3d at 733; *O'Malley,* 392 F. Supp. 2d at 1045; *see also Burns v. Wilderness Ventures, Inc.,* No. 12 C 4188, 2012 WL 3779069, at *6 (N.D. Ill. Aug. 30, 2012) (dismissing pursuant to Rule 12(b)(3) without prejudice to refiling in the appropriate forum because plaintiff's claims were covered by the valid and enforceable forum selection clause); *Ackerley Media Grp., Inc. v. Sharp Elecs. Corp.,* 170 F. Supp. 2d 445, 451 (S.D.N.Y. 2001) (upon finding claims subject to arbitration, dismissing the complaint because defendant had "not asked the court to *enforce* the choice of forum clause, and the court decline[d] to transfer this case sua sponte"). Plaintiffs' claims are subject to binding arbitration pursuant to their employment agreements with First Liberty and Proficio, and thus this Court is not the appropriate venue for the adjudication of those claims. Because no party requested that the Court compel arbitration, the Court dismisses Plaintiffs' complaint.

## CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs' claims against First Liberty and Proficio are subject to arbitration pursuant to the arbitration provisions in their respective employment agreements. Accordingly, Defendants' motions to dismiss (R. 23; R. 27) are GRANTED on the basis of improper venue. First Liberty's alternative motions to stay (R. 23);

to sever (R. 23); and to transfer (R. 23) are DENIED as moot. Plaintiffs' complaint is dismissed without prejudice to refiling in the appropriate forums.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: April 25, 2013**